UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN CARLO HUELCHES ARCHILA, A-221-489-936,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, MESA VERDE DETENTION FACILITY, et al.,<br><br>Respondents. | No. 1:26-cv-2077 DC AC<br><br><br>FINDINGS & RECOMMENDATIONS |

Petitioner, an immigration detainee proceeding through counsel, has filed a First Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his detention by the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 15. Petitioner argues that detention based on his immigration status violates his due process rights under the Fifth Amendment, and he seeks immediate release or a § 1226(a) bond hearing where respondents must demonstrate clear and convincing evidence that petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks. Id. As discussed below, the court recommends that petitioner's request for habeas relief be granted, and that petitioner be immediately released from custody.

////

////

1

I.      Factual Background

Petitioner is a native and citizen of Guatemala who entered the United States without inspection and lived within the interior of the United States for approximately 19 years.  ECF No. 16, Ex. 1 at 3 (Form-212); ECF No. 15 at 5.  Petitioner's parents brought him to the United States to avoid gang violence in Guatemala when he was eleven years old and enrolled him in school.  ECF No. 15-1 at 2-3.  Petitioner graduated from high school in Maryland in 2019 and obtained stable employment.  ECF No. 15-2 at 9-13.

On February 16, 2026, ICE apprehended petitioner via a traffic stop in Silver Spring, Maryland, and initiated removal proceedings.  ECF No. 16, Ex. 1 at 3 (Form-212).  Petitioner was served with an administrative warrant and a Notice to Appear.  Id., Exs. 2-3.  Prior to his detention, petitioner was not provided written notice of the reason for his detention, respondents did not assess whether he was a danger to the community or flight risk, and petitioner did not receive a hearing.  It is undisputed that petitioner's detention is not based on any criminal history that would trigger mandatory detention under the Immigration and National Act ("INA").  Id., Ex. 1 at 3.

Petitioner represents that when he was first arrested and detained in Maryland, he was denied access to clean water for multiple days and drank water out of the toilet to survive.  ECF No. 15-3 at ¶ 2 (Archila Decl.).  He is currently detained at the Mesa Verde Detention Center in Bakersfield, California.  ECF No. 15 at 3.

II.     Procedural History

On March 16, 2026, while proceeding pro se, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking his release from ICE custody.  ECF No. 1.  By Minute Order dated March 20, 2026, the court granted petitioner's request for appointment of counsel.  ECF No. 6.  After two brief extensions of time (ECF Nos. 10, 14), petitioner filed the operative First Amended Petition for Writ of Habeas Corpus on April 22, 2026 (ECF No. 15).  The petition asserts that petitioner's arrest and detention without a bond hearing to determine whether he is a safety or flight risk violates his substantive and procedural right to due process.

Id. at 7-10.

Respondents contend that as a noncitizen with no legal status seeking admission to the United States, petitioner constitutes an "applicant for admission" subject to mandatory detention without a bond hearing pursuant to 8 U.S.C. § 1225(b)(2)(A).  ECF No. 16 at 1-3.  Respondents cite to Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020) to argue that "[a]s an alien physically present in the United States without having been admitted, Petitioner is treated for constitutional purposes as if stopped at the border."  ECF No. 16 at 6.  As a result, respondents argue that petitioner's current detention is consistent with the requirements of due process.  Id. at 8.  Respondents ask the court to dismiss the petition, or if the court were to find petitioner subject to § 1226(a), limit any injunctive relief to allowing for a post-deprivation bond hearing.  Id. at 8.

Petitioner filed a reply arguing that respondents' position is contrary to the wealth of cases in this district have addressed this issue and determined that persons found in the interior are not "applicants for admission" under §1225.  ECF No. 18 at 3.  Instead, noncitizens who are found in the interior, as opposed to a port of entry, shall have their cases evaluated under §1226(a), and are therefore entitled to a bond hearing if they are detained.  Id.  In light of petitioner's detention in deplorable and punitive conditions since February 16, 2026, petitioner argues that application of the three-part test from Mathews v. Eldridge, 424 U.S. 319, 335 (1976) mandates his release from confinement.  Id. at 6-8.

III.    Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)).  In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence.  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

////

////

3

IV.    Discussion

A.    Violation of the INA

Although the petition argues only that petitioner's detention violates his right to due process (ECF No. 15 at 7-10), subsumed within that argument (and more clearly articulated in petitioner's reply brief) is a claim that his detention violates the INA because he is subject to § 1226, not § 1225(b)(2) (ECF No. 18 at 2-4). Because petitioner's due process argument relies in part on which section is applicable to him, the court will address this issue first. With respect to the authority for petitioner's detention, the parties dispute whether petitioner is subject to § 1226, as petitioner claims, or § 1225(b)(2), as the respondents claim. The central question in resolving this dispute, as in an overwhelming number of other cases currently proceeding in this court, is whether petitioner is an applicant "seeking admission."

8 U.S.C. § 1225 governs the procedures by which the government may mandatorily detain "an applicant for admission." Section 1225(a)(1) defines "an applicant for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018). Both categories are subject to mandatory detention until a certain point or until certain proceedings have concluded. Id. Despite mandatory detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." Id. at 288 (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)). The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no *other* circumstances under which [noncitizens] detained under § 1225(b) may be released." Id. at 300. Accordingly, there is no statutory right to a bond hearing for noncitizens detained under § 1225(b). Id. at 296-97. By regulation, release is available only where "the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).

////

4

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion to detain or release. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing Jennings, 583 U.S. at 288). It also provides that "a detainee may request a bond hearing before an immigration judge at any time before a removal order becomes final" and "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." Salcedo Aceros v. Kaiser, No. 25-cv-06924 EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025).

In this case, petitioner's argument is that because he was already present in the country, § 1226(a) applies to him, entitling him to the procedures for detention it requires. ECF No. 15; ECF No. 18 at 2-4. Respondents argue that petitioner is properly detained under § 1225(b)(2) but do not offer a basis for his detention under § 1225(b)(2) other than DHS's new statutory interpretation that this provision applies broadly to all noncitizens, including petitioner, who are present in the United States and have not been admitted. ECF No. 16 at 2-6.

The legal arguments relied upon by the government have been consistently rejected by a majority of the courts across the country.

> By a recent count, the central issue in this case—the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.

Barco Mercado v. Francis, No. 25-cv-6582 LAK, __ F. Supp. 3d __, 2025 WL 3295903, at *4 & App'x A (S.D.N.Y. Nov. 26, 2025) (collecting cases); Contreras-Cervantes v. Raycraft, No. 2:25-cv-13073, 2025 WL 2952796, at *8 & n.4 (E.D. Mich. Oct. 17, 2025) ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has

resided in this country, irrespective of the length of time, having been apprehended and arrested within the border of the United States.  The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a).") (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country."  Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases); see also Lepe v. Andrews, No. 1:25-cv-1163 KES SKO, __ F. Supp. 3d __, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) ("The government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice.") (collecting cases).  Indeed, respondents fail to acknowledge the wealth of authority contrary to their position. ECF No. 16.

The undersigned agrees with the well-reasoned and persuasive decisions by the overwhelming majority of courts that have addressed this issue, and rejects the government's new interpretation of § 1225 as the applicable immigration detention authority for all inadmissible noncitizens.  Like these courts, the undersigned finds that § 1226(a), rather than § 1225(b)(2)(A), applies to a non-citizen, like petitioner, who is already living in the United States.

For these reasons, the court finds that respondents have violated the INA by improperly subjecting petitioner to mandatory detention under § 1225(b).

### B.   Due Process

Petitioner also argues that his indeterminate detention violates due process.  ECF No. 15 at 8-10.  Petitioner has resided within the United States for over 19 years, and it is undisputed that he has no criminal history that would subject him to mandatory detention pursuant to § 1226(c). Id. at 2.  Respondents argue that because petitioner is a noncitizen "seeking admission" he is subject to mandatory detention under § 1225(b)(2) and therefore not entitled to any process.  ECF No. 16 at 7.  The undersigned rejects respondents' argument for the reasons set forth above.

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Furthermore, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citations omitted).

Respondents incorrectly characterize Thuraissigiam as meaning that petitioner has no due process rights beyond those afforded by statute. See ECF No. 16 at 6. In Thuraissigiam, the Supreme Court held that a noncitizen who enters or attempts to enter the country illegally "has only those rights regarding *admission* that Congress has provided by statute." 591 U.S. at 140 (emphasis added). As this court has previously explained, Thuraissigiam's holding is inapplicable in a § 2241 habeas petition because petitioner is not challenging his *admissibility* into this country, he is challenging the constitutionality of his *detention*. Gholami v. Chestnut, No. 1:25-cv-1644 DAD DMC, 2025 WL 3640675, at *2 n.5 (E.D. Cal. Dec. 16, 2025); Kandola v. Warden of California City Det. Facility, No. 1:26-cv-2714 DAD SCR, 2026 WL 1243464, at *2 n. 2 (E.D. Cal. May. 6, 2026) (second alteration in original) (emphasis added)); Gholami v. Chestnut, No. 1:25-cv-1644 DAD DMC, 2025 WL 3640675, at *2 n.5 (E.D. Cal. Dec. 16, 2025).

Thuraissigiam is also materially distinguishable because petitioner was permitted to pass through our gates and is a person who has been living within the United States for years and as such entitled to Due Process under Zadvydas v. Davis, 533 U.S. 678, 687 (2001). See Barbosa da Cunha, 2026 WL 1146044, at *15 ("While the doctrine may extend further than the twenty-five yards and twenty-four hours at issue in Thuraissigiam, ... no one could seriously contend that it applies to a noncitizen like Petitioner who has been living in the United States for decades."); Guaman Carlozama v. Warden of the California City ICE Det. Facility, No. 1:26-cv-1702 TLN CKD, 2026 WL 1042586, at *2 (E.D. Cal. Apr. 17, 2026). By permitting petitioner to remain at

liberty for 19 years, the government enabled petitioner to develop a protected liberty interest in his freedom from confinement.

For these reasons, the undersigned finds that petitioner has established a liberty interest in his continued freedom from custody.  Having determined that a liberty interest exists, the court must now examine what process is due.  See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").  To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

With respect to the first Mathews factor, petitioner has a strong private interest in remaining free from detention.  Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").  Petitioner was out of custody for 19 prior to his detention, during which time he graduated from high school in Maryland and became gainfully employed.  ECF No. 15-2 at 9-13.  Petitioner asserts (and respondents do not dispute) that he has no criminal record.  This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. Considering that petitioner has been detained for over four months without being provided a bond hearing, the risk of erroneous deprivation is high, particularly in light of the fact that respondents do not argue or present any evidence that petitioner presents a danger to the community or a flight risk.  See A.E. v. Andrews, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025); R.D.T.M. v. Wofford, No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D.

Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).  Similarly, no neutral arbiter has made such a determination.

Finally, while the government has an interest in enforcing its immigration laws, the government's specific interest in detaining petitioner without a hearing is low, and the effort and cost required to provide petitioner procedural safeguards are minimal.  See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty.  Respondents provide no evidence of urgent concerns warranting petitioner's detention without a hearing.

Accordingly, the undersigned finds that petitioner's Fifth Amendment right to due process was violated and he is entitled to habeas relief under the Mathews factors.  Because respondent does not assert an alternative lawful basis for petitioner's detention or extenuating circumstances that would warrant petitioner's continued unlawful detention pending a bond hearing, the court recommends that petitioner be released from custody.  See Esteban-Escalante v. Warden, Mesa Verde Ice Processing Ctr., No. 1:26-CV-0096 DC CKD (HC), 2026 WL 392393, at *1 (E.D. Cal. Feb. 12, 2026) (granting immediate release for noncitizen who was detained after living in the United States for approximately two years); Alvarez Maciel v. Noem, No. 1:26-cv-01318-DC-CKD, 2026 WL 496948 (E.D. Cal. Feb. 23, 2026) (granting injunctive relief of immediate release for noncitizen who was detained by U.S. immigration authorities after living in the United States for over twenty years); Barajas Ortiz v. Chestnut, No. 1:26-cv-01167-DC-SCR, 2026 WL 508419 (E.D. Cal. Feb. 24, 2026) (same as to noncitizen who had lived in United States for over 30 years); Acevedo Duran v. Albarran, No. 1:26-cv-01108-DC-CSK, Doc. No. 11 (E.D. Cal. Feb. 26, 2026) (same as to noncitizen who had lived in United States for approximately 2–3 years).

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.    Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 15) be

9

GRANTED, as follows:

    a.  Respondents shall IMMEDIATELY RELEASE petitioner JOAN CARLO HUELCHES ARCHILA, A-221-489-936.  At the time of release, respondents must return all of petitioner's documents and possessions.

    b.  Respondents are ENJOINED AND RESTRAINED from attempting to re-detain petitioner unless they comply with the requirements under 8 U.S.C. § 1226(a), the Constitution, and any other laws or treaties of the United States.

    c.  The order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal and petitioner receives notice of that final order of removal.

2.  Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release.

3.  The Clerk of the Court is directed to enter judgment for petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Within **three** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 1, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

10